REUBEN T. SIMS, Executor, Appellant, *v.* AGNES W. SIMS, Appellee.

1. EXECUTOR : PAYMENT OF CLAIMS BY.—If an executor, or administrator, pay a claim against his decedent, which is duly probated and allowed, *primâ facie* he is entitled to an allowance for it, in his final account ; but if he pay a claim not probated and allowed, *primâ facie* he acts in his own wrong ; and he will not be entitled to an allowance for it, unless he establish, by competent evidence before the court, that the claim is just and valid, and that it remained unpaid at the time it was paid by him.

2. STATUTE OF LIMITATIONS: HOW CLAIMS OF EXECUTOR AFFECTED BY.—The debt of an executor, or administrator, against his testator or intestate, if not barred by the Statute of Limitations, at the time of his appointment or qualification as such, will not become afterwards barred before final settlement, although the period limited for suit has elapsed ; and it is not necessary in such case for him to pay his debt, or claim allowance for it, until final settlement, if he has procured it to be legally probated and recorded within the proper time.

APPEAL from the Probate Court of Monroe county.   Hon. W. A. Tucker, judge.

On the 7th day of January, A. D. 1850, the appellant, Reuben T. Sims, filed his petition in the Probate Court of Monroe county, praying that the will of Benjamin F. Sims be admitted to probate, and that he be qualified as executor thereof. The will was admitted to probate, and the appellant qualified as executor. Benjamin F. Sims died in the month of September, A. D. 1849. The appellee, Agnes W. Sims, renounced the will under the statute ; whereupon the estate belonged equally to her and her son, the issue of said B. F. Sims.

In August, 1854, the appellant filed his petition for final settlement of said estate, and thereupon presented his final account for audition and allowance.

The appellee, Agnes W. Sims, the widow of Benjamin F. Sims, appeared and filed exceptions to the final account, and among others the following :—She excepted to vouchers 20, 22, 28, because they had not been legally probated ; to voucher, 54, because

it was barred by the Statute of Limitations, and not proved in open court, or before the judge; to voucher 55, for the same reason; to voucher 56, because it was barred by Statute of Limitations, and not sufficiently proven; and to voucher 47, because not properly proven, examined and allowed. Voucher 20, was a note made by tesator, to A. J. Underwood, for $252.55, but it was not probated. On the trial in the court below, the appellant read his own affidavit to the correctness of the note, and the note itself, but offered no other proof.

Voucher 22, was a promissory note made by testator, to W. H. Vasser, for $250, but not probated. On the trial, the appellant introduced said Vasser, as a witness, who testified as follows : " That the note for $250, due to him by B. F. Sims, in his lifetime, was just and correct, and was paid to him by R. T. Sims, as executor.

Voucher 54, was an open account, dated in 1846, for $86, for cash advanced by appellant, in payment of a horse, for testator.

This account had been disallowed, on a previous annual settlement, because barred by the Statute of Limitations, but was regularly probated, on the 6th of day September, A. D. 1851, upon the testimony of the appellee, who testified that it had been acknowledged to be due and unpaid by the testator, within two years previous to that time.

Voucher 55, was an open account for $31.87, in favor of appellant, dated February, 1849, for cash advanced by him, in payment of rent of land, due by testator to one Tindall. This was probated upon the testimony of appellant and Tindall.

Voucher 56, was an open account in favor of appellant, against testator, for $822.50, dated in 1848, and composed of various items, among which was $80, paid for the horse, $10, paid to Russel for catching a negro, and $43, paid to J. W. Marshall, for his cloak lost by B. F. Sims's negro boy. This was probated to the extent of $742.50, on the 8th day of July, 1851. There was no proof of item of $10, paid to Russell. The affidavit of J. W. Marshall, upon which the item of $43, was probated, was " that he knows the charge of $43 in the account, to be correct and true; that the same was paid to him by Reuben T. Sims, for and on

account of Benjamin F. Sims, deceased." R. S. Gladney, in the trial, testified in relation to this item: "That Reuben T. Sims acted as agent for his brother, B. F. Sims, during his absence; but witness did not know whether he was authorized to act as his agent or not: that a negro boy belonging to B. F. Sims, was charged with stealing a cloak, and was threatened with a criminal prosecution: that Reuben T. Sims compromised the matter, by paying the amount claimed for the cloak." This was all the evidence in relation to this item.

Voucher 28, was an open account, in favor of Henry & Mott, dated 3d April, 1849, for $55.98, being a store account. This was not probated. On the trial the appellee testified, "That the account was correct, and that the articles were purchased by her and B. F. Sims, in his lifetime, when they went to house-keeping." Joseph R. Gates, testified, "that as agent for appellant, he paid the account to Henry & Mott."

Voucher 47, was an open account, in favor of Ragsdale & Co., for $13.66, dated 6th December, 1848: probated and allowed, and paid in April, 1851.

Vouchers 20, 22, 28, had been allowed in his annual settlement. Vouchers 54, 55, 56, and 47, were not presented for allowance, until the final account was filed.

The court below sustained the exceptions to all the vouchers, and passed his final account, thus corrected. From this decree Sims, the executor, appealed.

*W. F. Dowd*, for appellant.

All the claims excepted to, were regularly probated, except vouchers 20, 28, and 22. These claims were paid without being probated or examined, and allowed.

The statute provides, that the executor shall pay no claim against this estate, without a previous probate, "otherwise than at his own risk." This clearly contemplates that, if an administrator pays a claim, without a previous probate of the same, it devolves on him to prove that it was a just charge on the estate on his final settlement. The probate was intended merely to justify executors, &c., in making a private payment of a claim.

It is not conclusive; and the parties interested may sustain an exception to them, even if probated, if shown to be wrong, on the final settlement. *Sumrall* v. *Sumrall*, 24 Miss. R. 259. On the other hand, a suit may be brought, judgment recovered, and *the property of the estate sold*, without a *previous probate*. *Rawlin* v. *Poindexter*, 27 Miss. R. 64. If the claim is probated, it is *primâ facie* evidence of the correctness of the claim; and if paid by the executor, it devolves on those who except to his final settlement, to show the contrary.

On the other hand, if the executor pays without a probate, *he is not prohibited* from having the same allowed in his final settlement, but "*pays at his own risk*,"—that is, he *takes upon himself* the burthen of establishing the correctness of the claim. The statute (Hutch. Code, 664, § 90,) will bear no other sensible construction. To say it makes the claim thus paid an absolute loss to the executor, however just, is to legislate, and not to construe. 3 How. 216, 303; 4 Ib. 242.

The act of 1846, (Hutch. Code, 681, § 5,) makes no alteration in the law in this respect. *Rawlins* v. *Poindexter*, 27 Miss. R. 64.

All the claims, as before stated, not probated, were proved to be correct, and the exceptions were improperly sustained.

2. Every other exception was sustained, on the ground that the claims were barred by the Statute of Limitations. It is not pretended that any claim was barred by the statute at the time the executor qualified, or at the time of the death of the intestate, with one exception. But it is insisted that they were barred by the statute at the time the *final account* was presented for allowance. *For this reason* and *no other*, the exceptions were sustained to vouchers 54, 55, 56, 57, and others. The executor was qualified on the 9th of January, 1850, the intestate having died in September, 1849. At the August term, 1854, the final account was filed. All the claims thus excluded, were the individual debts of the executor against the intestate in his lifetime, except those before mentioned.

The answer to the objection that the claims were barred by the statute, at the time the final account was filed in August, 1854,

is, *that the executor could not sue himself.* Even if the present-ment of the claims for allowance, in his annual accounts, were deemed a suit, it cannot apply to the individual claims of the exe-cutor, for the same reason. The will instructs the executor *not to sell any of the property to pay debts,* but to pay the same out of any money that may come to his hands. The annual settlements show that the income was all, or nearly all, expended. How then, could the executor pay his own debts and other claims, without selling property to do so?

A brother, anxious to fulfil the instructions of the will, gene-rously waits for his own claims till everybody else is paid; and because he does so, he shall lose his money! If he had sold the property, and paid himself, he would have violated the express provisions of the will. If he waited, and carried out the will, he shall lose his money! *Such an outrageous act of injustice cannot be tolerated by this court.*

But the question is not an open one; it has been fully settled by this court.

In the case of *Turner* v. *Ellis,* 2 Cush. (24 Miss. R.) 180, 181, it is determined, " that whatever would be a good defence against a suit on a claim, would be equally good against an allowance by the Probate Court, or commissioner of insolvency. *But this rule, of course, would not apply to the commissioner's own claim, as he could not sue himself.*" This was decided on a question of the Statute of Limitations.

There is another important consideration, which is equally deci-sive of this question. Nothing can be plainer than this: that from the whole will, the testator intended to place the management of the property under the control of his executor—*his brother.* " Pay all my just debts out of any money that may come to your hands, but *do not sell any property for that purpose.*" It is manifest that, in order to carry out this instruction, the executor must have been clothed with such powers under the will, touching the pay-ment and settlement of debts, as would enable him to make such acknowledgments of them, and promises of payment at a future day, as would induce creditors to delay suits against the estate,

and thus enable him to pay debts, without "selling property for that purpose."

If so, the executor *would be authorized to make a subsequent promise,* which would take a claim out of the Statute of Limitations. These principles are fully settled in the case of *Waul* v. *Kirkman,* 3 Cushm. (25 Miss. R.) 622, 623, 624, after full argument and deliberation.

If, therefore, the absurdity could be tolerated, that an executor could sue himself, certainly in this case *he could promise to pay himself,* so as to remove the bar.

If all these claims had been due to another party, and the executor had induced him to wait by an express promise to pay, so as to avoid the sale of the property, as the will directed, could the executor then plead the Statute of Limitations? The case of *Waul* v. *Kirkman,* decides that he could not. Shall he lose his rights as a creditor, because he generously carried out the will of a dead brother?

*There is not the shadow of a suspicion, about the correctness and justice of these claims. It was not even pretended* in the court below, that they were unjust. The evidence embodied in the bill of exceptions, abundantly proves that the claims were just. The only pretext for excluding them was, that the executor regarded the obligations of his oath, to carry out the will; would not sell the property, but waited for the final settlement, for his own claims! Yet the widow, after reaping the benefit of a brother's generosity and good faith, seeks to avoid the payment of this large sum, by the Statute of Limitations! It is a position utterly unsupported by precedent or authority.

*Sale* and *Phelan,* for appellee.

There is *very little* in this voluminous record. Much of plaintiff's brief seems to have nothing to do with it. In short, the executor filed his *final* account for settlement, to which the appellee filed *exceptions,* some of which were allowed, others rejected, and a decree rendered. As the exceptions which were *allowed* are stated in the decision of Judge Tucker, his action in the allowance of those *special* exceptions is the only question. They are

these: Vouchers 54, 55, 56, 47, 20, 22, 28. We state them in the order in which they appear in the record.

Voucher 54, is an item of $80, paid for a horse, in 1846. *This* item had been *disallowed* in his first *annual* account. No other attempt was made to have it allowed in any subsequent *annual* account, but on his *final* account he again includes the item of $80 for the horse, with $50 ! *interest ! ! !*

Voucher 55, is an item of $31.87, for alleged rent of land, in 1849. It had not been paid—if at all—at the request of the testator, and was not a just claim against the estate. It had not been claimed in any other account; but in his *final* account he states the item of $31.87, and adds $15.91 *interest !* The *executor* introduced no proof as to *this* item.

Voucher 56. This is a rare item. It consists of what appears to be a running account between the executor and his testator, including a large item of $800 *loaned money*, from 1848. This item was sternly contested. Although it was *seven* years old, it had never been brought in upon any *annual* account. The evidence is altogether insufficient to sustain it; but on his *final* account, he brings in this item of $742.50, and adds *interest* $318.36, calculated at eight per cent. Not only so, but after his item of $80, for the horse, (referred to in voucher 54,) had been *disallowed* in his first *annual* report, and after he had already once more brought it in on his final account, *as a separate item,* he again places it among the other items of this *running* account of seven years?

Voucher 47. This is an item of $13.66, too trifling to notice. There was a contest as to *when* the account was due, and the Statute of Limitations, which the court decided.

Voucher 20. This is a note of $252.55, due one Underwood. The note was not paid by the executor at all. The *testator* was a member of the firm of *Sims* & Redus. After his death, Redus became a partner of the firm of *Gates* & Redus, to whom the business of the old firm was transferred. This house paid to the executor such portions of the effects of the old firm as, at various times, came to its hands, &c. *This* note was paid by *this firm,* for the testator, *and the receipt shows it !* The executor only

charges himself with *such sums* as the survivor may pay him; and in their settlements with him, they doubtless deducted the amount thus paid in the discharge of this note. The executor *never* paid it, and an allowance to him of that amount would be a loss of that sum to the estate. There is not a *particle* of *proof* or *reason* why this note should be allowed.

Voucher 22. The identical objection urged to the above claim applies to this item. It is a note to Vasser, *paid by surviving parties*, and *not* the executor.

Voucher 28. This is an item of $55.98, due in 1849, with no evidence that it was ever paid. *There is no receipt.* Or, even if paid, it was doubly barred by the statute. There can be no shadow of objection to the rejection of this claim. Due in 1849 —never brought in until final account in 1855—(although *three* annual settlements after that time)—no *receipt* of payment—no *interest* charged—no *time* alleged of payment, &c., &c.

There is also an item of $70, being voucher 64, which was not allowed by the judge, but which is erroneously enumerated in his opinion as 54—this number being mentioned *twice*. It consists of items of *expenses*, personally incurred in *travelling*, &c., on business of the estate. This court has decided that *such expenses* are not chargeable to the estate, but must be paid by the administrator out of his commissions.

The judge in this case, allowed five per cent., which was very liberal.

*W. F. Dowd*, in reply.

Many of the debts of the estate were paid in this way:—The cotton crops of the estate were shipped to Gates & Redus: they were the commission merchants of the executor. At his request, they paid many of the debts of the estate. The executor charged himself with the *whole of the cotton crops, and credits himself with the amount thus paid.* The account current of Gates & Redus, *shows that the executor was charged with the various items* paid by them; and this account is balanced in full.

HANDY, J., delivered the opinion of the court.

This is an appeal from an order of the Probate Court of Monroe county, allowing certain exceptions filed by the appellee, the testator's widow, to the final account and settlement of the executor.

The first question for consideration arises upon the rejection by the court below of certain claims against the estate, which the executor had paid, and which had not been probated and allowed in the due and usual form, and which were not proved to be valid claims, upon exceptions taken to them.

It is clear that the court acted properly, in refusing to allow these claims in the executor's final settlement. The rule to be deduced from the provisions of the statute in relation to the establishment of claims against estates of deceased persons, is plainly this:—if an executor or administrator, having sufficient funds in his hands, pay a claim which is duly probated and allowed, *primâ facie* he is entitled to an allowance for the same in his final account, but if he pay a claim not probated and allowed, *primâ facie* he acts in his own wrong, and he will not be entitled to an allowance for it, unless he adduce competent evidence before the court, that the claim was just and valid, and that it remained unpaid at the time it was paid by him. Under this rule, the claims numbered 20, 22, and 28, in the bill of exceptions, were properly rejected.

Another question arises upon the rejection by the court of several claims against the testator due to the executor, and which he set up in his final account, as debts due to him in the testator's lifetime, and remaining unpaid. These claims were disallowed, on the ground that they were barred by the Statute of Limitations. They were not barred by the statute, at the time the appellant took upon himself the trust of executor. But the court below appears to have held them as barred, because their allowance was not claimed by the executor, until he presented his final account, at which time, the period necessary to create a bar had elapsed.

We do not think that these claims were barred by the statute. If they had been demands of a party who could have sued upon them, the bar would have attached. But being debts due the executor, he could not sue himself as executor. He did all that he could legally do to assert his claims, by having them probated and allowed, and registered in the records of the Probate Court as

claims against the estate. So far as others were interested, this was legal notice to them of his claims, and no detriment could arise to them, further than would have existed if the claims had belonged to a stranger, and he had sued the executor for them. Nor is it any reason for the application of the bar to them, that the executor did not apply moneys in his hands to their payment, before he paid the claims of other creditors, nor that he did not render any account of these claims in his previous annual accounts. It would not have been proper to mention such claims in his annual accounts, unless he had then paid them, and it certainly cannot be complained, that he paid other creditors before he satisfied his own claims, unless it can be shown that he had in his hands funds sufficient to pay all the debts, and then the reason would be not against the entire claims, but against the allowance of interest.

It was, therefore, error to disallow the vouchers referred to in the bill of exceptions, as 54, 55 and 56. But in the last mentioned voucher, the items for $10 paid to Russell, and $43 paid to Marshall, were not established by legal proof, and the charge of $80, for a horse, had already been allowed in voucher 54. These three items were therefore properly excluded; but the bar of the statute was improperly applied to the other items in voucher 56. It was also improperly applied to voucher 47, which was the claim of a creditor of the estate, paid by the executor before the bar of the statute attached to it, and for which he was entitled to an allowance.

The voucher 57, which is commented on by counsel, is not mentioned in the bill of exceptions as having been disallowed, or that any exception was taken in relation to the action of the court upon it.

The judgment is reversed, and the case remanded for further proceedings.